## Ex ·Parte Smith.

CONTEMPT OF COURT.—The Circuit Courts are authorized by statute to punish contempts of their authority or process by fine and imprisonment.

SAME.—And without the statute, the power of the court to protect its dignity and authority by punishing contempts is inherent, necessary and incidental.

ATTORNEYS.—PROCEEDINGS TO DISBAR.—Proceedings to disbar an attorney are regulated by the statute, (2 G. & H., § 780, p. 330) and though an attorney may have been guilty of a contempt which would have justified the imposition of a fine or imprisonment, the court cannot disbar him for such offense by a summary order.

APPEAL from the *Randolph* Circuit Court.

ELLIOTT, C. J.—This is an appeal by *Jeremiah Smith* from the order and judgment of the *Randolph* Circuit Court, disbarring him from practicing as an attorney of said court, and ordering that his name be stricken from the roll of attorneys thereof, for contempt.

The facts, as they appear by a bill of exceptions, are these: An action of slander (*Burnworth* v. *Hiatt*) was pending in said court, in which said *Smith* was attorney for the plaintiff. For the purpose of dismissing said action, on the 6th day of *March*, 1867, in the vacation of said court, said *Smith* wrote on the court docket, opposite the docket entry of said cause, the following entry, viz:

"Having become satisfied that we cannot get the law administered, by direction of the plaintiff, I hereby dismiss this action, without prejudice to the plaintiff. When law ceases to be paramount, liberty ceases. *March* 6th, 1867.

"JER. SMITH, for plaintiff."

Afterwards, on the second day of the *March* term, 1867, of said court, said entry of dismissal was read in open court, in the presence of *Smith*, who then stated that he "indorsed and fathered every word" in said entry. On the fifth day of the same term of the court, a conversation occurred in open court between *Smith* and *Thomas M. Browne*, an attorney of said court, in reference

to said cause and the dismissal thereof, when *Browne* said to *Smith* that all the rulings of the court in the case had been for him, *Smith*, to which the latter replied that he would refer him to the *Hanchy* case, (which had been determined in said court at the preceding term thereof,) and that he could refer to other matters. On the next succeeding day of the same term of the court, the judge of the court read to *Smith*, in open court, the entry of dismissal in the case of *Burnworth* v. *Hiatt*, and orally stated to him the language he had used in open court in reference thereto on the second and fifth days of said term, and requested him to purge himself of the contempt of court in the language so used in the written dismissal of said cause, and in his subsequent oral statements in open court in reference thereto. It appears by the bill of exceptions, that a statement of some kind was thereupon made to the court by said *Smith*, but what it was we are not advised, as the record does not contain it. At the conclusion of the statement, the court drew up a written summary of the matters herein before stated, and read it to said *Smith*, who thereupon declared that he had no further statement to make. Whereupon the court adjudged him guilty of a contempt of said court, and ordered that he be "disbarred from practicing as an attorney in said court, during the pleasure of the court, and that his name be stricken from the roll of attorneys of said court."

This is, in effect, a judgment suspending the appellant from practicing as an attorney in said court, during the pleasure of the court.

The statute invests Circuit Courts with authority to "punish by fine and imprisonment, or either, all contempts of their authority and process in any matter before them, or by which the proceedings of the court, or the due course of justice, is interrupted." 2 G. & H. § 13 p. 8. But independent of the statute, it is an inherent, necessary and incidental power of the court to protect itself, its authority and dignity against insult, and gross violations of decency and decorum, by the infliction of summary punishment by fine

and imprisonment, or either, upon those guilty of such contempts. *The State* v. *Tipton*, 1 Blackf. 166; *Brown* v. *Brown*, 4 Ind. 627.

It was said by BLACKFORD, J., in the case first cited, that "this great power is intrusted to those tribunals of justice for the support and preservation of their respectability and independence; it has existed from the earliest period to which the annals of jurisprudence extend; and, except in a few cases of party violence, it has been sanctioned and established by the experience of ages." *Lord Mayor of London's* case, 3 Wilson. 188; opinion of KENT, C. J., in the case of *Yates*, 4 Johns. 317; *Johnston* v. *The Commonwealth*, 1 Bibb 598.

But proceedings to remove or suspend an attorney are regulated in this State by statute, by which it is provided that "any court of record may suspend an attorney from practicing therein for any of the following causes:

"1. Where he has been convicted of a felony, or of a misdemeanor involving moral turpitude; in either of which cases the record of conviction is conclusive evidence.

"2. When he is guilty of a willful disobedience or violation of the order of the court requiring him to do or forbear an act connected with or in course with his profession.

"3. For a willful violation of any of the duties of an attorney, as herein before prescribed." 2 G. & H. § 777, p. 329.

One of the duties enjoined upon attorneys by section 771 of the same act is "to maintain the respect that is due to the courts of justice and judicial officers."

The statute also directs the mode of procedure in such cases, as follows: "Section 780. The proceedings to remove or suspend an attorney may be commenced by the direction of the court, or on motion of an individual. In the former case, the court must direct some attorney to draw up and prosecute the accusation; in the latter case, it may be drawn up by any person, and sworn to by the person making it. Such accusation may be filed in any court in

which the attorney practices, and after five days notice of the filing, the attorney shall be bound to appear and plead to the same, or suffer judgment by default. If he appear, pleadings may be filed and trial had as in other cases."

Here, the proceedings were summary. The court first orally stated to the appellant the acts constituting the alleged contempt, and then reduced the statement to writing and read it to the appellant, and required him to answer thereto immediately. No attorney of the court was appointed to draw up and prosecute the accusation, as required by the statute, nor was the requisite notice thereof given to the appellant; but on his stating, in response to the requirement of the court to answer the accusation immediately, that he had no further statement to make, a judgment of suspension was rendered against him. This was an error. The proceedings in the case might have justified the court in thus summarily punishing the appellant by fine or imprisonment, or both, for the contempt, but they did not, under the statute, justify a judgment of suspension.

It is also insisted by the appellant that the facts stated in the record do not show that he was guilty of a contempt of the court. In this we do not concur. The foreign and unnecessary matter introduced into the order dismissing the suit can only be regarded as a direct reflection upon the integrity of the court. It was written on the court's docket, and afterwards reiterated, in effect, in open court, and was a direct insult to the court and a gross contempt of its authority, and, in our opinion, fully justified proper punishment.

The judgment is reversed and set aside, and the case remanded to the Circuit Court for further proceedings, not inconsistent with this opinion.

*J. Smith* and *N. B. Taylor*, for appellant.