FILED

Apr 28 2016, 8:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

William J. O'Connor
Hammond, Indiana

ATTORNEY FOR APPELLEE

Kevin C. Smith
Smith Sersic
Munster, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Alfonso M. Aguayo and William O'Connor, <br><br> *Appellants,* <br><br> v. <br><br> City of Hammond Inspection Department, <br><br> *Appellee* | April 28, 2016 <br><br> Court of Appeals Case No. 45A05-1510-SC-1719 <br><br> Appeal from the Lake Superior Court <br><br> The Honorable Jesse M. Villalpando, Judge <br><br> Trial Court Cause No. 45D12-1504-SC-391 |

**Mathias, Judge.**

[1]     The Inspection Department of the City of Hammond ("the City") filed a small claims action against Alfonso M. Aguayo ("Aguayo") in Lake Superior Court seeking to recover rental registration fees. Aguayo initially failed to respond, and the trial court entered a default judgment in favor of the City. Aguayo then hired attorney William O'Connor ("O'Connor") to represent him and seek to have the default judgment set aside. Because O'Connor had previously acted as

counsel for the City, the City filed a motion to disqualify O'Connor as Aguayo's counsel, which the trial court granted. O'Connor appeals and argues that the trial court erred in disqualifying him from serving as counsel in this and other similar cases.

We reverse.

## Facts and Procedural History

O'Connor served as assistant city attorney for the City of Hammond from 1984 to 1995, when he was appointed as Corporation Counsel for the City. O'Connor was terminated from this position in 2000. Four years later, he was again hired as the City's Corporation Counsel. O'Connor then retired from this position on July 1, 2013.

For several years, the City has had an ordinance requiring landlords who rent residential property within the City to pay an annual registration fee for each rental unit by April 15 of the current year. If this fee is not timely paid, a late fee of $500 per unit is owed. Additionally, a fine no less than $300 nor more than $2,500 may be imposed. *See* Hammond, Ind., Code of Ordinances § 96.152 (2011).

On August 15, 2005, Aguayo executed a document titled "Agreement to Sell Real Estate." Appellant's App. p. 15. This document set forth an agreement to sell Aguayo's real estate on contract to Humberto Moran ("Moran") for $80,000. *Id.* The agreement provided that Moran would pay $8,175.49 up front,

with the remaining balance to be paid in monthly installments of $833.88 for 120 months. *Id.*

[6]     On April 15, 2015, the City filed a notice of claim against Aguayo in small claims court seeking to recover an unpaid rental registration fee of $320 plus late fees of $2,000. Apparently, the City considered the agreement between Aguayo and Moran to be a rental agreement. Aguayo was served by certified mail with the City's complaint on April 20, 2015. At the small claims hearing held on May 12, 2015, Aguayo failed to appear, and the City moved for default judgment, which the trial court granted.

[7]     Aguayo then hired O'Connor to represent him in the matter. On May 22, 2015, counsel for the City sent a letter to O'Connor, in which he stated, "If Mr. Aguayo, pro se, wishes to move to set aside the default judgment, I would not object, however, should you attempt to enter your appearance in this matter I will file a motion to disqualify you based upon your conflict of interest with the City of Hammond." Appellant's App. p. 43.

[8]     On June 10, 2015, O'Connor filed an appearance on behalf of Aguayo and filed a motion to set aside the default judgment. On June 16, 2015, the City filed a motion to disqualify O'Connor because of his previous service as Corporation Counsel for the City. O'Connor responded to this motion and claimed that he had appeared in other cases where the City was a party without objection. He also claimed that the City had recently begun to file objections to his appearance in all cases in which he represented a client being sued by the City.

On September 4, 2015, the trial court held a hearing on the matter. Counsel for the City indicated that it intended to dismiss its claim against Aguayo with prejudice, regardless of how the trial court ruled on the motion to disqualify. O'Connor argued that the question was therefore moot. The trial court acknowledged that the "easy way out" was to grant the City's request to dismiss the action, thereby rendering the disqualification issue moot. Tr. p. 23. The trial court, however, was concerned that this issue would simply reoccur in another case. Yet, what concerned the trial court the most was the level of personal animosity that O'Connor and counsel for the City seemed to display toward each other. Indeed, the court expressed its disappointment with both parties:

> So it bothers me here is that all that history, whether we were on the same side or not, that there is always respect. What I've seen here is deviation from that. That's what bothers me.

> Because none of us are strangers to controversy. We may have opponents, but we've never had enemies. What did Nixon say at the very end, too late of course; never hate your enemies, because if you do you end up destroying yourself. Lesson learned [too] late for him, but he was right. . . .

> My concern here is you guys with this stridency you're taking it up, you're ratcheting it up to more than just a legal issue here of conflict which it's a conflict. It is a conflict. The question is there is all kinds of, everyday, there is conflicts in this county. It wouldn't be Lake County if we didn't have conflicts. What you try and do is you disclose them up front and business as usual. This is not business as usual here. There is something going on that I'm not seeing. I exposed a little bit of this. This ancillary

lawsuit[]. And I'm very disheartened to hear about disciplinary issues.. . .[1]

But what I'm concerned about mainly, quite frankly, is you two guys. Both public servants trying to represent your clients as best you can in a tough environment. Yes, and I know how it can sometimes devolve into personal animosity. It's not healthy. Believe me, I know that. It's not healthy.

Tr. pp. 24-27.

[10] The trial court took the matter under advisement, and on September 14, 2015, entered an order granting the motion to disqualify O'Connor, which concluded that "O'Connor may not represent private clients against his former client, the City of Hammond, in transactions similar to the one in the above-entitled cause." Appellant's App. pp. 8-9. The trial court then granted the motion to set aside the default judgment and, on September 24, 2015, dismissed the case against Aguayo. O'Connor now appeals.

## Discussion and Decision

[11] On appeal, O'Connor contends that the trial court's order disqualifying him was improper for three main reasons: (1) the trial court was without authority or jurisdiction to partially "disbar" O'Connor; (2) the trial court should not have ruled on the motion to disqualify because the case was moot; and (3) that O'Connor's representation of clients being sued by the City for ordinance

---

[1] According to the City's counsel, O'Connor had filed disciplinary complaints against him, the City's mayor, and the City's current Corporation Counsel.

violations did not constitute a violation of the Indiana Rules of Professional Conduct.[2]

## A. The Trial Court's Authority to Rule on a Motion to Disqualify

[12] O'Connor first argues that the trial court was without authority or jurisdiction to "partially disbar" him because only the Indiana Supreme Court has authority and jurisdiction to discipline or disbar attorneys. The City argues that trial courts have authority to disqualify attorneys who appear in matters before them. Both parties are partially correct.

[13] The Indiana Supreme Court has "exclusive jurisdiction over . . . [m]atters relating to the practice of law including . . . [t]he discipline and disbarment of attorneys admitted to the practice of law[.]" Ind. Appellate Rule 4(B)(1)(b); *see also* Ind. Const. art. VII, § 4 (providing that the Indiana Supreme Court has original jurisdiction in matters of "discipline and disbarment of those admitted [to the practice of law].");  *In re Murgatroyd*, 741 N.E.2d 719, 721 (Ind. 2001) (noting that those performing acts constituting the practice of law are subject to the "exclusive jurisdiction" of the Indiana Supreme Court "to regulate professional legal activity in this state."). Thus, O'Connor is correct that only the Indiana Supreme Court may discipline or disbar him.

---

[2] O'Connor also briefly requests that we grant him appellate attorney fees, but he does not develop this argument fully or cite to any authority. We therefore decline to address his underdeveloped claim. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record.") (citing Ind. Appellate Rule 46(A)(8)(a)).

[14] However, our supreme court has also held that "[a] trial court may disqualify an attorney for a violation of the Rules of Professional Conduct that arises from the attorney's representation before the court." *Cincinnati Ins. Co. v. Wills*, 717 N.E.2d 151, 154 (Ind. 1999) (citing *State v. Romero*, 578 N.E.2d 673, 676-77 (Ind. 1991)). The trial court's authority to disqualify attorneys is "necessary to prevent 'insult and gross violations of decorum.'" *Id.* (quoting *McQueen v. State*, 272 Ind. 229, 231, 396 N.E.2d 903, 904 (1979)). Importantly, however, this authority is limited to attorneys appearing before the court. *Id.* "More precisely, the authority of the trial court is limited to disqualification *in the case before the court*." *Id.* (emphasis added).

[15] Thus, the trial court's order disqualifying O'Connor *in the present case* was within the trial court's authority. However, to the extent that the order purports to limit O'Connor's ability to represent clients in other cases, the order exceeded the authority of the trial court. In the future, O'Connor's ability to represent clients in other cases involving the City will have to be decided by the trial court (or courts) hearing those cases.

*B. Mootness*

[16] O'Connor also claims that the case before the trial court was moot because the City had indicated that it was prepared to dismiss the case against Aguayo regardless of how the trial court ruled on its motion to disqualify. An issue becomes moot when it is no longer live and the parties lack a legally cognizable interest in the outcome, or when no effective relief can be rendered to the parties. *Castetter v. Lawrence Twp.*, 959 N.E.2d 837, 841 (Ind. Ct. App. 2011). An

actual controversy must exist at all stages of the appellate review, and if a case becomes moot at any stage, then the case is remanded with instructions to dismiss. *Id.*

[17] We conclude that the disqualification issue was not moot when the trial court entered its order on the motion to disqualify because the City had not yet filed a motion to dismiss the matter. Indeed, the case against Aguayo was not dismissed until ten days after the trial court had issued its order disqualifying O'Connor. Thus, an actual controversy was before the trial court—whether O'Connor should be disqualified from representing clients with interests adverse to the City.

*C. Violations of Rules of Professional Conduct*

[18] O'Connor also claims that the trial court erred in concluding that he violated the Rules of Professional conduct such that he should have been disqualified from representing other clients with interests adverse to the City. The City argues that the trial court rightly disqualified O'Conner from the present case.

[19] A serious problem arises if we attempt to address this issue on the merits, because the case against Aguayo has already been dismissed. We have already concluded above that the trial court's order, as far as it purports to disqualify O'Connor in future cases, is outside the authority of the trial court. Thus, even if we were to agree with O'Connor that the trial court erred in disqualifying him, the only effect this would have would be with regard to the trial court's disqualification of O'Connor in the instant case—a case which has already been

dismissed. Accordingly, we would not be able to afford any relief to O'Connor (or Aguayo) in the present case. Simply, the only portion of the trial court's disqualification order that has any continuing force is the same portion we have concluded was beyond the trial court's authority. Accordingly, we decline to address the issue of whether the trial court's disqualification order was proper because the issue of the disqualification order is moot as it pertains to the present case, and we can render no effective relief. *See Castetter*, 959 N.E.2d at 841.

[20] This does not leave O'Connor without recourse. As noted above, when and if this issue is presented again, the trial court in that case will have to determine whether O'Connor should be disqualified based on the facts and circumstances of that case. If the trial court disqualifies O'Connor, then O'Connor should seek to have the trial court's order certified for interlocutory appeal. If the trial court denies the request to certify its order for interlocutory appeal, so long as the City does not again dismiss the case against O'Connor's client,[3] he may still appeal the issue in a case in which we would be able to afford the injured party effective relief.

## Conclusion

[21] The issue of O'Connor's disqualification was not moot at the time of the trial court's order. The trial court's order disqualifying O'Connor was a valid

---

[3] If the City repeatedly dismisses its claims against O'Connor's clients, this surely only *benefits* his clients.

exercise of the trial court's authority, but only to the extent it disqualified O'Connor from the case immediately before the trial court. Once the case was dismissed on motion of the City, that dismissal mooted much of the trial court's disqualification order as pertained to that case. However, the trial court exceeded its authority to the extent that it purported to disqualify O'Connor from representing clients with interests adverse to the City in future cases. We therefore reverse that portion of the trial court's disqualification order.

[22] In summary, the issue of O'Connor's disqualification in the present case is now moot as the City filed a motion to dismiss the case against Aguayo, which the trial court granted. Accordingly, we decline to address the merits of the trial court's disqualification order vis-à-vis the present case. Therefore, the only active issue before us is the trial court's order barring O'Connor from representing clients with adverse interests to the City in future cases, and on this issue, we reverse the trial court's order, as the trial court had no authority to rule beyond the case before it.

[23] Reversed.

Kirsch, J., and Brown, J., concur.