**KENTUCKY BAR ASSOCIATION, Complainant,**

v.

**Burton R. SIGNER, Respondent.**

Supreme Court of Kentucky.

Feb. 20, 1976.

---

Leslie G. Whitmer, Counsel, Kentucky
Bar Ass'n, Frankfort, for complainant.

Frank A. Logan, Louisville, for respondent.

PER CURIAM.

The respondent, Burton R. Signer, was admitted to the Ohio bar on April 23, 1958. On or about March 2, 1966, after having practiced in Ohio for more than five years, he applied for admission to the Kentucky bar without examination. Upon receipt of a favorable report on his moral and professional character by the National Conference of Bar Examiners he was admitted to the Kentucky bar on July 22, 1966.

Meanwhile, during 1965 Signer had conducted certain business dealings in Ohio that eventuated in his disbarment by the Supreme Court of Ohio on July 28, 1972. See *Cincinnati Bar Association v. Signer*, 30 Ohio St.2d 303, 285 N.E.2d 10 (1972). The Ohio disciplinary proceeding was initiated in October of 1971 and did not come to the attention of the Kentucky Bar Association until some time in 1973. On January 9, 1974, the Kentucky Bar Association instituted this disciplinary proceeding based solely on the Ohio disbarment.

The trial committee conducted a hearing of the charge and concluded that under *In re Clay*, Ky., 261 S.W.2d 301 (1953), the Full Faith and Credit Clause of the United States Constitution (Article 4, § 1) requires Signer to be disbarred or suspended in Kentucky so long as the Ohio disbarment continues in full force and effect. The bar association's board of governors concurred, and so recommends to this court.

■■■ The action of the Supreme Court of Ohio in barring Signer from the practice of law in Ohio did not purport to affect his right to practice law in any other state, and could not validly have done so anyway. The Full Faith and Credit Clause cannot possibly be twisted into giving to the Ohio action an effect it did not purport to have. The Ohio court ruled that Signer cannot practice in Ohio. The fundamental requirement of full faith and credit is merely that every other state recognize that he cannot practice in Ohio, and of course we recognize that.

It is conceivable, for example, that under the prevailing standards of one state a lawyer could be disbarred for expectorating on a public sidewalk, whereas in another the rigors of professional discipline might be somewhat less severe. What might suffice to justify disbarment in Ohio might not suffice here. Unlike a marital status, for example, which involves the same two people wherever they may be, the right to practice law does not involve the same two parties from state to state. It involves the individual person on the one hand and the individual state in which he claims the right to practice on the other. The status existing between the two cannot, of itself, determine the status of the same individual person and another state.

The bar association's logic would require that if the man had been convicted of a felony in Ohio and sentenced to five years in the penitentiary, full faith and credit would require him to be convicted and sentenced here as well. The dog simply will not hunt.

*In re Clay*, Ky., 261 S.W.2d 301 (1953), is unsound and is overruled.

■■■ The bar association takes the position also that because Signer was admitted to practice in Kentucky on the basis of his admission and five years of practice in Ohio, disbarment there should call for disbarment here. This too we find to be a novel theory indeed. In effect, it would mean that his admission to practice in Kentucky was something in the nature of a common-law determinable fee, or fee subject to a condition subsequent, to last only so long as he continued to be a member of the Ohio bar, or subject to termination here if terminated there. As it is, however, our rules do not provide for that kind of membership. One who is admitted on motion based on his membership and practice in another state has precisely the same rights as one who is admitted on the basis of the bar examina-

tion. We doubt that anyone would seriously question that proposition, and if it is correct, then obviously he must be subject to exactly the same disciplinary rules. Again pursuing the bar association's peculiar logic, if Signer had been admitted to practice here before he was admitted in Ohio his disbarment there would not require his disbarment here, but the purely fortuitous circumstance that he had been admitted in Ohio first would call for the opposite result. Absurd.

We now turn to the serious questions in the case. What effect should the Ohio action, without further proof, have in a disciplinary proceeding brought in this state, and to what extent is it significant that the conduct leading to Signer's disbarment in Ohio took place before he was admitted in Kentucky?

In answer to the first of these questions, we are favorably impressed by the reasoning of the Supreme Court of Florida in *The Florida Bar v. Wilkes,* Fla., 179 So.2d 193 (1965), and are of the opinion that it should govern the effect of disciplinary proceedings based on conduct that has been the subject of disciplinary proceedings held in other states. That case involved a rule that we do not have here, but the absence of a rule need not impede the application of a sound principle.

■ Absent some defense sufficient to support a collateral attack, we are of the opinion that the facts adjudicated in the sister state, on which its disciplinary judgment was based, should be treated as conclusively established, eliminating any necessity of retrying the same factual issues, or other factual issues that could and should have been raised in that case, in a disciplinary proceeding here. But there the influence of the foreign judgment must end. This state alone must be the judge of the relationship between the lawyer's conduct and his fitness, and the arbiter of what shall be the consequences upon his right, to practice law here.

■ On the second question, the effect upon one's right to practice law of misconduct committed prior to his admission has differed among the various courts that have had the occasion to consider it. See annotation at 165 A.L.R. 1138 (1946). If the conduct in question had actually and fully come to the attention of the bar association or its agency for investigating and reporting on the applicant's fitness, no doubt his admission to practice thereafter would preclude future consideration of it as a basis for disciplinary action. On the other hand, if the bar association had no knowledge of it, or was unaware of some substantial element of it, public protection against a potential vulture justifies disbarment if it be fairly determined after a due process hearing that the conduct was such that, if known at the time, it would certainly have resulted in a denial of his application for admission to the bar. In short, that is the criterion we think must be applied in this instance.

■ It will be necessary, therefore, for the bar association to determine whether to institute a new charge or an amended charge against Signer based upon the facts adjudicated by the Ohio court and, in the event such a charge is brought, to have it heard and considered with respect to whether those facts, if known at the time, in good conscience would have required (not *justified,* but *required*) rejection of his application.

The matter is remanded to the Kentucky Bar Association for further proceedings consistent with this opinion.

All concur.